TERESA C. CHOW (SBN 237694)
tchow@bakerlaw.com
ALEXANDER VITRUK (SBN 315756)
avitruk@bakerlaw.com
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:   310.820.8800
Facsimile:   310.820.8859

*Attorneys for Defendant*
SCRIPPS HEALTH

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE GOREY, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SCRIPPS HEALTH,<br><br>Defendant. | Case No.:   **'23 CV 0519 LAB DEB**<br><br>[San Diego County Superior Court Case No.:  37-2023-00004850-CU-BT-CTL]<br><br>**DEFENDANT'S NOTICE OF REMOVAL**<br><br>Action Filed:         02/02/2023<br>Action Removed:   03/22/2023 |

## NOTICE OF REMOVAL

Over the past two decades, the federal government has engaged in an extensive effort to build a nationwide health information technology infrastructure. This case challenges the legitimacy of actions SCRIPPS HEALTH ("Scripps") has taken in connection with pursuing that directive. Scripps therefore removes this case pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

In like circumstances, as explained *infra* at pp. 12-13, district courts have allowed removal under the federal officer removal statute. *See Doe I v. UPMC*, No. 2:20-cv-359, 2020 WL 4381675, at *6 (W.D. Pa. July 31, 2020); *see also Doe v. ProMedica Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627, at **2-3 (N.D.

BAKER & HOSTETLER LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES

Ohio Oct. 30, 2020). In support of removal, Scripps provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a):

## NATURE OF THE CASE

1.    Scripps is a California nonprofit public benefit corporation with its principal place of business at 10140 Campus Point Drive, San Diego, California 92121.

2.    On February 2, 2023, Plaintiff Catherine Gorey filed a complaint against Scripps, in the Superior Court of the State of California for the County of San Diego, Case No. 37-2023-00004850-CU-BT-CTL.

3.    Plaintiff served Scripps with the Complaint, effective on February 20, 2023.

4.    Plaintiff's three-count Complaint purports to challenge Scripps' routine on-line practices as various invasions of privacy, including alleged violations of the (1) California Invasion of Privacy Act, Cal. Penal Code § 631(a); (2) Confidentiality of Medical Information Act § 56.10; and (3) California's Constitutional right to privacy. *See generally* Complaint.

5.    Scripps operates the website, www.scripps.org, that among other things, provides information to the public about Scripps and allows patients to access their medical records through a Scripps patient portal.

6.    Plaintiff alleges she "has used www.scripps.org since at least 2022, accessing the website from both her mobile phone and computer" and "has used www.scripps.org to access the Scripps patient portal for various uses, including to book appointments and to view the results of medical tests." Compl. ¶ 8.

7.    Plaintiff alleges that, through the Facebook Pixel, allegedly used on Scripps' website, "Scripps shares its patients' identifies and online activity, including information and search results related to their private medical treatment." *Id*. ¶ 31.

Baker & Hostetler llp
Attorneys at Law
Los Angeles

2

8.    The Facebook Pixel is one of several advertising tools offered by Facebook,[1] that is a "piece of code" that "advertisers, like Scripps, [can] integrate into their website." *Id.* ¶ 28.  The Facebook Pixel allegedly "tracks the people and type of actions they take." *Id.* (internal quotations omitted).

9.    Plaintiff does not assert that Scripps discloses names, social security numbers, diagnoses, birth dates or comparable information to third parties.

## BASIS FOR REMOVAL

10.    Scripps removes this case pursuant to the federal officer removal statute. 28 U.S.C. § 1442(a). That statute permits removal when the defendant is "the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency therefore, in an office or individual capacity, for or relating to any act under color of such office …" *Id.* § 1442(a)(1).

11.    The United States Supreme Court has directed that the federal officer removal statute is to be broadly construed, and that defendants may remove under this statute when they are acting under color of federal office. *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981). To do so, a defendant must show that (a) it is a "person" within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a "colorable federal defense." *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 986–87 (9th Cir. 2019) (quoting *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018)).

12.    Since at least 2004, the federal government – through executive order, legislation, and regulatory and sub-regulatory action – has directed and overseen a public-private initiative to develop a nationwide infrastructure for health information technology. It has incentivized and directed providers who participate in the Medicare and Medicaid programs (like Scripps) to offer patients online access to their medical records, and to optimize patient engagement with their medical

---

[1] Facebook rebranded itself as Meta in 2021.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

information. The federal government has also modeled the behavior it wants to see; it has created a portal for Medicare beneficiaries and worked with the same third-party services, with the same "source code," at issue in this case.

13.     Scripps has dutifully assisted and followed the federal government's direction in this effort. In so doing, it has acted within the penumbra of federal action and office. Given this, and the Supreme Court's directive that the federal officer removal statute must be broadly construed, and because this suit challenges this federally-directed conduct, the requirements of the federal removal statute are satisfied.

### *The Meaningful Use Program*

#### *President Bush Establishes the Position of National Health Information Technology Coordinator*

14.     In 2004, President George W. Bush issued an Executive Order that established a National Health Information Technology Coordinator ("National Coordinator"). *See* Exec. Order 13335 (Apr. 27, 2004). The purpose of the Order was to spark a "nationwide implementation of interoperable health information technology in both the public and private health care sectors." *Id*.

15.     Through the Executive Order, President Bush further ordered the National Coordinator to "develop, maintain, and direct the implementation of a strategic plan to guide the nationwide implementation of interoperable health information technology in both the public and private health care sectors that will reduce medical errors, improve quality, and produce greater value for health care expenditures." *Id*.

#### *The National Coordinator Makes Access to Online Health Care Records a National Priority*

16.     From the outset, one important piece of this federal health information technology mission was the ability for individuals to be able to access their health records online. *See* TOMMY G. THOMPSON & DAVID J. BRAILER, MD, PHD, The Decade

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF REMOVAL

of Health Information Technology: Delivering Consumer-centric and Information-rich Health Care, at pg. e (July 21, 2004).

17.    But years later, when the percentage of Americans accessing their health information online remained low, the National Coordinator reported in 2015: "To truly empower consumers and move the health care system to become more patient-centered, *the government will need to help change these dynamics*." (*Id.* (emphasis added).) *See also, e.g.,* Joan Neuner, MD, MPH, et al., *Meaningful Use and the Patient Portal: Patient enrollment, use and satisfaction with patient portals at a later-adopting center*, AM. J. MED. QUAL. (Mar. 2015), at pg. 1 ("only 28% of physicians reported having EHRs that allowed patient access to records. Despite this, the architects of the MU rules have set the high bar for patient EHR access and communication.").

<u>*Congress Uses Financial Incentives to Ensure that Health Care Providers Make Their Health Care Records Available to Patients and their Caretakers Online*</u>

18.    In 2009, Congress codified the Office of the National Coordinator in the Health Information Technology for Economic and Clinical Health Act of 2009. 123 Stat. 115, 247 (2009).[2] At that time, Congress allocated billions of dollars to CMS to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [National Coordinator]." *Id.*

19.    As with President Bush's Executive Order, Congress tasked the National Coordinator with a series of responsibilities under federal law, including to "update the Federal Health IT Strategic Plan (developed as of June 3, 2008) to include specific objectives, milestones, and metrics" with respect to each of the following: "(i) [t]he electronic exchange and use of health information and the enterprise

---

[2] "There is established within the Department of Health and Human Services an Office of the National Coordinator for Health Information Technology." 42 U.S.C. § 300jj-11(a).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

integration of such information," as well as "(vii) [s]trategies to enhance the use of health information technology in improving the quality of health care." 42 U.S.C. § 300jj-11(3)(A) (Strategic plan).

20.    Congress further codified a series of incentive payments for the Department of Health and Human Services, in conjunction with the Centers for Medicare and Medicaid Services, to make to health care providers for their adoption of health information technology, including through the Medicare program. *See* 42 U.S.C. § 1395w-4(o) (Incentives for adoption and meaningful use of certified EHR technology); *see also* C. Stephen Redhead, *The Health Information Technology for Economic and Clinical Health (HITECH) Act*, at pg. 2 (CONG. RES. SERV. Apr. 27, 2009) (discussing various financial incentives).

21.    As the Congressional Research Service explained at the time: "Beginning in 2011, the legislation provides Medicare incentive payments to encourage doctors and hospitals to adopt and use certified EHRs. Those incentive payments are phased out over time and replaced by financial penalties for physicians and hospitals that are not using certified EHRs." *Id.*

*The National Coordinator Makes Online Access to Health Information a Key Component of the Meaningful Use Regulations*

22.    The following year, the Department of Health and Human Services adopted the Meaningful Use regulations. *See* DEPARTMENT OF HEALTH AND HUMAN SERVICES, CENTERS FOR MEDICARE AND MEDICAID SERVICES, *Medicare and Medicaid Programs; Electronic Health Record Incentive Program*, 75 Fed. Reg. 144, 44314 (Jul. 28, 2010). In introducing the final regulations the agencies stated as follows: "Certified EHR technology used in a meaningful way is one piece of a broader HIT infrastructure needed to reform the health care system and improve health care quality, efficiency, and patient safety." *Id.*, 44321.

23.    One central component of the meaningful use regulations was the ability for patients to access their health care records online. *See* 42 C.F.R. §

495.20(f)(12)(i)(B) ("Beginning in 2014, provide patients with the ability *to view online*, download, and transmit information about a hospital admission.") (emphasis added); *see also id.* at (ii)(B) (same); Rᴇʙᴇᴄᴄᴀ Mɪᴛᴄʜᴇʟʟ Cᴏᴇʟɪᴜs, *Get the facts regarding view, download and transmit 2014 requirements*, HealthITbuzz, The Latest on Health IT from the ONC, at pg. 1 (Jan. 31, 2014) ("All providers and hospitals attesting to Meaningful Use in 2014 will need to implement the [view, download, and transmit] VDT capabilities for their patients. Those in Stage 1 will attest for *access*, those in Stage 2 will attest for *use*. The term 'online access' used in the VDT measure definitions refers to all three capabilities – view, download and transmit.") (emphasis in original).

24.    The regulations required health care providers to attest to the National Coordinator and to the Centers for Medicare and Medicaid Services on their progress with respect to this criteria in particular. *See* 45 C.F.R. § 170.314(e)(1)(i) (requiring reporting on "Patient engagement" for "[v]iew, download, and transmit to 3d party"; "EHR technology must provide patients (and their authorized representatives) with an online means to view, download, and transmit to a 3d party the data specified below," including "[t]he Common [Meaningful Use] Data Set"); 45 C.F.R. § 170.102 (Definitions) (defining the term "Common [Meaningful Use] Data Set" to include "[s]moking status," "[m]edications," "[m]edication allergies," "[l]aboratory tests," "[l]aboratory value(s)/result(s)," "[v]ital signs," "[c]are plan field(s), including goals and instructions," and "[p]rocedures").

*The National Coordinator Directs Healthcare Providers to Make Patient Portals Available to their Patients Online*

25.    To meet these criteria, the federal government directed health care providers to make online patient portals available to their patients: "You will have better success meeting meaningful use requirements for stage 2 if you integrate a patient portal effectively into your practice operations." Nᴀᴛ'ʟ Lᴇᴀʀɴɪɴɢ

Bᴀᴋᴇʀ & Hᴏsᴛᴇᴛʟᴇʀ ʟʟᴘ
Aᴛᴛᴏʀɴᴇʏs ᴀᴛ Lᴀᴡ
Lᴏs Aɴɢᴇʟᴇs

CONSORTIUM, *How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use Requirements* (May 2013).

26.    The government told health care providers that they "should understand the elements of an effective portal program and apply them to the specific needs of your practice." *Id*. Recommended governmental actions included "1. Learn the benefits of patient portals for patients and providers. 2. Understand how a patient portal helps achieve meaningful use requirements. 3. Implement proactive, engaging portal features. 4. Implement the portal with a systematic process. 5. *Actively promote and facilitate portal use.*" *Id*.

27.    The National Coordinator subsequently issued a "Patient Engagement Playbook," which was described as "a tool for clinicians, health care practice staff, hospital administrators, and others who want to leverage health IT – particularly electronic health records (EHR) patient portals – to engage patients in their health and care." THE OFFICE OF THE NAT'L COORDINATOR FOR HEALTH INFORMATION TECHNOLOGY, *Patient Engagement Playbook* (last updated Apr. 17, 2019).

28.    The National Coordinator has also specified how providers can optimize such portals, explaining that they "must be engaging and user-friendly"; "how a patient portal helps achieve meaningful use requirements"; and how a provider can "actively promote and facilitate portal use." THE OFFICE OF THE NAT'L COORDINATOR FOR HEALTH INFORMATION TECHNOLOGY, *How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use Requirements* (2013), available at https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patientengagement.pdf.

29.    The National Coordinator has also published guidance for private providers to follow, including through five-year strategic plans. In the 2015-2020 plan, it dictated that "federal agencies" were to "collaborate with . . . private stakeholders to . . . build a culture of electronic health information access and use." THE OFFICE OF THE NAT'L COORDINATOR FOR HEALTH INFORMATION TECHNOLOGY,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Federal Health Information Technology Strategic Plan 2015-2020*, available at https://www.healthit.gov/sites/default/files/9-5-federalhealthitstratplanfinal_0.pdf (emphasis added). And, in the 2020-2025 plan, it noted that this has already happened, saying: "Federal, state, and local governments, along with the private sector, have worked together to help digitize health information and healthcare." THE OFFICE OF THE NAT'L COORDINATOR FOR HEALTH INFORMATION TECHNOLOGY, *Federal Health Information Technology Strategic Plan 2020-2025* available at https://www.healthit.gov/sites/default/files/page/2020-10/Federal%20Health%20IT%20Strategic%20Plan_2020_2025.pdf    ("2020-2025 Strategic Plan").

30.    In addition to this guidance, CMS has created its own portal, offering a model for private providers to follow. To optimize individual engagement with the portal, CMS relies on third-party marketers, like Google and Facebook. By working with over two dozen third-party servicers, CMS is able to provide users with the information most relevant to them. *See generally* Medicare.gov, Privacy Policy (explaining that website "users' activity on third-party websites that Medicare.gov links to (like Facebook or Twitter) is governed by the security and privacy policies of those websites," and that any information users "provide to register on Facebook is voluntarily contributed and isn't maintained by" CMS).

*Scripps Makes a Patient Portal Available Online to Scripps Patients in Direct Furtherance of this Federal Mission*

31.    The MyChart patient portal is a tool created and promoted by Scripps for its patients' use as a direct result of the federal initiative to make health care records available to patients online. Since establishing the patient portal, Scripps has continually met the Meaningful Use criteria, and has thus received incentive payments from the federal government. If necessary, Scripps is prepared to submit a declaration supporting its participation in the Meaningful Use program.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

9

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### *Scripps Is A "Person"*

32.    By the plain terms of the statute, removal is permitted by "any person acting under that officer." 42 U.S.C. § 1442(a)(1).

33.    While the statute is silent as to the definition of a "person", organizations, corporate defendants, and government entities have routinely removed under this provision and been deemed a "person" under the statute. *See, e.g., Arness v. Boeing N. Am., Inc.,* 997 F. Supp. 1268, 1272 (C.D. Cal. 1998); *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992); *Overly v. Raybestos-Manhattan*, No. C-96-2853-SI, 1996 U.S. Dist. LEXIS 13535, at *7 (N.D. Cal. Sept. 6, 1996); *Malek v. Blackmer Pump Co*., No. CV 15-04454 SJO (JEMx), 2015 U.S. Dist. LEXIS 97755, at *5 (C.D. Cal. July 24, 2015).

34.    Scripps is a nonprofit California corporation and since the federal officer statute is to be broadly construed, Scripps qualifies as a person under that statute.

### *There is a Causal Nexus Between Scripps' Actions and Plaintiff's Claims*

35.    To demonstrate a causal nexus, the private person must show: (1) that the person was "acting under" a federal officer in performing some "act under color of federal office," and (2) that such action is causally connected with the plaintiff's claims against it. *See Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1244–50 (9th Cir. 2017). The federal officer removal statute should be "liberally construed" to fulfill its purpose of allowing federal officials and agents who are being prosecuted in state court for acts taken in their federal authority to remove the case to federal court. *Watson v. Philip Morris Cos*., 551 U.S. 142, 147–49, 127 S.Ct. 2301, 168 L.Ed.2d 42 (2007).

### *Scripps is Acting Under a Federal Officer*

36.    This element focuses on the relationship between the federal government and the private entity.  It asks whether the entity is engaged in "an effort to assist, or to help carry out, the duties or tasks of the federal superior," and whether the relationship between the government and private entity involves "detailed

regulation, monitoring, or supervision." *Goncalves*, 865 F.3d at 1245 (citing to *Watson*, 551 U.S. at 152).

37. Here these fundamental and liberally-construed requirements are easily met. The federal government is incentivizing, regulating, monitoring, and supervising Scripps' actions in the Meaningful Use program in order to meet the federal government's national priority of interoperable health information technology.

38. First, Scripps (along with numerous other healthcare entities) is helping the government produce the nationwide, interoperable information technology infrastructure for health information. Notably, the federal government itself has repeatedly acknowledged the private sector's essential role in the project, most recently stating that "the federal government and private sector have worked together to help digitize health information and healthcare." *See* 2020-2025 Strategic Plan.

39. Second, in the absence of Scripps actions (and the work of comparable medical providers throughout the country), the federal government would be left alone to complete its mission. As its efforts to digitize information and increase patient engagement with Medicare beneficiaries underscore, it would likely attempt to do exactly that.

40. Third, the government has specified how to best enhance patient engagement, including through a patient portal. It has clarified how to generally design the portals, and has told entities how best to market their on-line resources. Furthermore, through its own engagement with third-party services, it has modeled the behavior that private entities are to follow.

41. Finally, the government has created an office dedicated to this issue and has closely monitored the work of private entities (like Scripps). It has also supervised the general development of this information technology infrastructure. And, because Meaningful Use incentives have been available only to entities participating in the Medicare and Medicaid programs, CMS substantially

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

incentivizes Scripps and comparable organizations to not only maintain public websites and/or patient portals, but also to achieve meaningful use of them.

42.    In like circumstances, courts have liberally construed the "acting under" requirement, holding that defendant medical providers were "acting under" a federal officer while performing similar alleged conduct. *UPMC*, 2020 WL 4381675, at *6 (holding that the University of Pittsburgh Medical Center's participation in the Meaningful Use Program was sufficient to satisfy the "acting under" requirement necessary for the federal officer removal statute); *see also Doe v. ProMedica Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627, at **2-3 (N.D. Ohio Oct. 30, 2020) (same; "[b]ecause [ProMedica Health System's] participation assisted the federal government in achieving [the creation of a unified system of patient electronic health records], Defendant has satisfied the 'acting under' prong").

43.    In *UPMC*, as in this case, plaintiffs sought redress under state law for UPMC's alleged disclosure of Plaintiff's personally identifiable information to third parties for internet marketing purposes without their knowledge or authorization. *UPMC*, 2020 WL 4381675, at *1. The UPMC court focused on both the portal and the public website as being ways of furthering the government's goal of increasing patient engagement with electronic health records. *See, e.g.*, "UPMC, as a participant in the Meaningful Use Program, receives incentive payments from DHHS for its development and use of the UPMC website and the MyUPMC portal in accordance with the program's criteria." *Id*. at *6. The UPMC court also emphasized that "it is not necessary that the complained-of conduct be done at the specific behest of the federal superior," and "any dispute about whether the allegedly wrongful conduct was outside the scope the private entity's duties is the very thing that should be left to a federal court to decide." *Id*. at *7. A private entity "need only show that the allegations in the complaint are directed at the private entity's efforts to assist a federal superior." *Id*. at **9-10. That low bar is clearly met here. Here, as in *UPMC*, "[t]here is plainly a connection or association between [the medical provider's

alleged] website management and marketing strategies and the Meaningful Use program, particularly the incentives that are tied to patient participation and usability. Plaintiff's claims are therefore 'for or relating to' an act under color of federal office." *Id*.

### *Plaintiff's Claims Relate to the Actions Under Color of Federal Office*

44.    Under Section 1442(a)(1), the conduct at issue in the case must also "have been undertaken for or relating to" the federal office. As the *UPMC* decision shows, this requirement is liberally construed and easily met here. *UPMC*, 2020 WL 4381675, at *12 ("There is plainly a connection or association between UPMC's website management and marketing strategies and the Meaningful Use program, particularly the incentives that are tied to patient participation and usability.").

45.    Plaintiff's Complaint directly challenges Scripps' website analytics practices, which promote "meaningful use" by helping to drive patients to the Scripps website and to the patient portal.

46.    Plaintiff's Complaint also generally targets Scripps' alleged tracking of online behaviors through source code and cookies, along with the use of marketing companies in conjunction with its public medical website. The Meaningful Use program envisions these activities, as manifested by the federal government's own use of these codes and third parties for its Medicare website.

47.    Indeed, as Plaintiff herself alleges, the entire point of using the third-party services is to direct traffic to, and increase engagement with, Scripps' website. For example, she alleges that Facebook Pixel is a "piece of code" that "tracks the people and type of actions they take." Compl. ¶ 28 (internal quotations omitted).

### *Scripps Raises Colorable Federal Defenses to Plaintiff's Claims*

48.    The final requirement for removal under this statute erects a low bar and merely requires that the defendant's assertion is both "defensive" and "based in federal law." *Mesa v. Cal.,* 489 U.S. 121, 129-30 (1989); *see also Bahrs v. Hughes Aircraft Co*., 795 F. Supp. 965, 969 (D. Ariz. 1992) ("The question is not whether a

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

13

defendant's claimed defense is meritorious, but only whether a colorable claim to such a defense has been made.").

49.    Defendant intends to assert several defenses, but by way of illustration and not limitation, there is at least one colorable federal defense to the claims at issue here that satisfy this requirement.

50.    In response to Plaintiff's repeated claims that "protected health information" was disclosed, Scripps will argue that the information purportedly disclosed (*i.e.*, IP addresses and other web metadata) is outside of the purview of protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA). This is a duty-based defense that Scripps had no duty under HIPAA. "In the federal officer removal context, a duty-based defense must be one that is based on a federal duty to act, or the lack of such a duty, such as denying alleged violations of a federal duty." *UPMC*, 2020 WL 4381675 at *6 (W.D. Pa. July 31, 2020) (citations and quotations omitted).  The Northern District of California has already held in an analogous case against numerous health care providers challenging alleged disclosures on the Internet through routine website traffic that the information allegedly transmitted is not protected under HIPAA. *See Smith v. Facebook*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017). This defense turns on an interpretation of federal law and on its own is sufficient to satisfy this element's low bar.

51.    Second, Scripps will argue that federal preemption applies here.  "A defense based on federal preemption of state law is also sufficient to raise a colorable federal defense for the purposes of the federal officer removal statute." *UPMC*, 2020 WL 4381675 at *7.  In *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 343 (2001), the Supreme Court held that plaintiffs' state law fraud on the Food and Drug Administration claims brought against the defendant inevitably conflicted with the FDA's responsibility to police fraud consistently with the Agency's judgment and objections.  The Supreme Court held that federal preemption is warranted where "the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

relationship between a federal agency and the entity it regulates is inherently federal in character." *Id.* at 347.    As the *UPMC* court recognized under similar circumstances, "the relationship between [a health care provider] and DHHS is 'inherently federal' in nature, such that the issue of whether [Plaintiff's] state-law claims are preempted under the principles articulated in *Buckman* should be decided by a federal court." *UPMC*, 2020 WL 4381675 at *7.

52.    Because each of the requirements of the statute are satisfied, removal to this Court is proper.

## PROCEDURAL REQUIREMENTS FOR REMOVAL

53.    Scripps satisfies all of the procedural requirements under 28 U.S.C. § 1446.

54.    Scripps is filing this Notice of Removal within thirty (30) days of its receipt of the Complaint by "service," 28 U.S.C. § 1446.

55.    Scripps files this Notice in the United States District Court of the Southern District of California, because the State court in which the action is pending, the Superior Court of San Diego County, is within this federal judicial district. This Notice is signed pursuant to Federal Rules of Civil Procedure, Rule 11.

56.    Scripps has attached hereto as **Exhibits "A-E"** true and correct copies of "all process, pleadings, orders, and other documents," currently on file in the state court, including Plaintiff's Complaint.

57.    Upon filing this notice, Scripps will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the State court.

58.    Pursuant to Federal Rule of Civil Procedure 7.1, Scripps is filing a Corporate Disclosure Statement concurrently with this Notice of Removal.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF REMOVAL

## CONCLUSION

59.    As set forth above, Plaintiff's Complaint directly challenges practices and procedures Scripps has taken acting under color of federal law in implementing federal policy to nationalize the health information technology infrastructure. Plaintiff's Complaint is therefore appropriately removable to this Court pursuant to 28 U.S.C. § 1442(a)(1).

Respectfully submitted,

Dated: March 22, 2023          **BAKER & HOSTETLER LLP**

By:   */s/ Teresa C. Chow*
      TERESA C. CHOW

*Attorneys for Defendant*
SCRIPPS HEALTH

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S NOTICE OF REMOVAL

# INDEX OF EXHIBITS

**Page No.**

**Exhibit A** (Summons) ........................................................................... 12

**Exhibit B** (Class Action Complaint) ...................................................... 13

**Exhibit C** (Civil Case Cover Sheet) ....................................................... 36

**Exhibit D** (Notice of Case Assignment and
Case Management Conference) ................................................................ 38

**Exhibit E** (Proof of Service of Summons) ............................................. 40

DEFENDANT'S NOTICE OF REMOVAL

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# EXHIBIT "A"

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:** | <div align="center">*FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*</div> |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SCRIPPS HEALTH

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**02/02/2023** at 06:23:50 PM
Clerk of the Superior Court
By Cheyenne Preston, Deputy Clerk

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CATHERINE GOREY, individually and on behalf of all other persons similarly situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court of California,<br><br>County of San Diego, 330 West Broadway, San Diego, CA 92101 | **CASE NUMBER:**<br>*(Número del Caso):*<br>37-2023-00004850-CU-BT-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
L. Timothy Fisher, Bursor & Fisher, P.A., 1990 N. California Blvd., Suite 940, Walnut Creek, CA 94596  Tel. (925) 300-4455

| DATE:<br>*(Fecha)* 02/03/2023 | Clerk, by<br>*(Secretario)* _____ | _____, Deputy<br>C. Preston  *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario  Proof of Service of Summons, (POS-010)).*

[SEAL: Superior Court of California, County of San Diego]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:

3. [x] on behalf of *(specify)*: Scripps Health

   under: [x] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
   [ ] other *(specify)*:
4. [ ] by personal delivery on *(date)*:

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100  [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**EXHIBIT A
PAGE 12**

# EXHIBIT "B"

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorneys for Plaintiff*

*Pro Hac Vice Application Forthcoming*

*[Additional Counsel Listed on Signature Page]*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

02/02/2023 at 06:23:50 PM

Clerk of the Superior Court
By Cheyenne Preston, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| CATHERINE GOREY, individually and on behalf of all other persons similarly situated,<br><br>              Plaintiff,<br><br>      v.<br><br>SCRIPPS HEALTH,<br><br>              Defendant. | Case No. 37-2023-00004850-CU-BT-CTL<br><br>CLASS ACTION<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

1    Plaintiff Catherine Gorey files this class action complaint on behalf of herself and all others

2    similarly situated (the "Class Members") against Scripps Health ("Defendant" or "Scripps").

3    Plaintiff brings this action based upon personal knowledge of the facts pertaining to herself, and on

4    information and belief as to all other matters, by and through the investigation of undersigned

5    counsel.

6    ## NATURE OF THE ACTION

7    1.    This is a class action lawsuit brought on behalf of all California residents who have

8    accessed and used www.scripps.org, a website that Defendant owns and operates.

9    2.    Defendant aids, employs, agrees, and conspires with Facebook to intercept

10    communications sent and received by Plaintiff and Class Members, including communications

11    containing protected medical information.  Plaintiff brings this action for legal and equitable

12    remedies resulting from these illegal actions.

13    ## JURISDICTION AND VENUE

14    3.    The Court has personal jurisdiction over Defendant because Defendant resides and

15    does business in the State of California, with its principal place of business at 10140 Campus Point

16    Drive, San Diego, CA 92121.

17    4.    This is a class action brought pursuant to Code of Civil Procedure § 382, and this

18    Court has jurisdiction over Plaintiff's claims because the amount in controversy exceeds this

19    Court's jurisdictional minimum.

20    5.    Venue is proper under Code of Civil Procedure §395(a), §395.5, and Civil Code

21    §1780(c) because a substantial part of the events or omissions giving rise to the claims asserted

22    herein occurred in this county.

23    ## THE PARTIES

24    ### *Defendant*

25    6.    Scripps is registered as a nonprofit entity with its principal place of business in San

26    Diego, California.  It offers a full range of medical services, including primary and outpatient care,

27    and treats thousands of patients throughout San Diego County each year. Scripps owns and

28

---

CLASS ACTION COMPLAINT

**EXHIBIT B
PAGE 14**

1    operates www.scripps.org.

2        ***Plaintiff***

3        7.      Plaintiff Catherine Gorey is an adult citizen of the state of California and is

4    domiciled in San Diego, California.

5        8.      Plaintiff Gorey has used www.scripps.org since at least 2022, accessing the website

6    from both her mobile phone and computer.  Plaintiff Gorey used www.scripps.org to access the

7    Scripps patient portal for various uses, including to book appointments and to view the results of

8    medical tests.  As described below, each time Plaintiff used Scripps' patient portal, she disclosed

9    medical information regarding her medical condition, history, or treatment.

10        9.      Plaintiff Gorey has an active Facebook account which she has maintained since at

11   least the time in controversy.  Plaintiff Gorey accesses her Facebook account from multiple

12   devices, including her smartphone.

13        10.     Pursuant to the systematic process described herein, Defendant assisted Facebook

14   with intercepting Plaintiff Gorey's communications, including those that contained personally

15   identifiable information, protected health information, and related confidential information.

16   Defendant assisted these interceptions without Plaintiff Gorey's knowledge, consent, or express

17   written authorization.

18        11.     By failing to receive the requisite consent, Defendant breached its duties of

19   confidentiality and unlawfully disclosed Plaintiff Gorey's personally identifiable information and

20   protected health information.

21                          **FACTUAL ALLEGATIONS**

22   **A.      Background of the California Information Privacy Act ("CIPA")**

23        12.     The CIPA prohibits aiding or permitting another person to willfully—and without

24   the consent of all parties to a communication—read or learn the contents or meaning of any

25   message, report, or communication while the same is in transit or passing over any wire, line, or

26   cable, or is being sent from or received at any place within California.

27        13.     To establish liability under section 631(a), a plaintiff need only establish that the

28

---

CLASS ACTION COMPLAINT

3

defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
> Or
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
> Or
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
> Or
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

14.    Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the internet, and email. *See Matera v. Google Inc*., 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc*., 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' internet browsing history).

15.    Under Cal. Penal Code § 637.2, Plaintiff and Class Members may seek injunctive relief and statutory damages of $2,500 per violation.

**B.    Background of the California Confidentiality of Medical Information Act**

16.    Pursuant to the California Confidentiality of Medical Information Act ("CMIA"), a "provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization, except as provided in

---

CLASS ACTION COMPLAINT

subdivision (b) or (c)." Cal Civ. Code § 56.10(a).[1] "An authorization for the release of medical information . . . shall be valid if it:

> (a) Is handwritten by the person who signs it or is in a typeface no smaller than 14-point type.

> (b) Is clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization.

> (c) Is signed and dated . . .

> (d) States the specific uses and limitations on the types of medical information to be disclosed.

> (e) States the name or functions of the provider of health care, health care service plan, pharmaceutical company, or contractor that may disclose the medical information.

> (f) States the name or functions of the persons or entities authorized to receive the medical information.

> (g) States the specific uses and limitations on the use of the medical information by the persons or entities authorized to receive the medical information.

> (h) States a specific date after which the provider of health care, health care service plan, pharmaceutical company, or contractor is no longer authorized to disclose the medical information.

> (i) Advises the person signing the authorization of the right to receive a copy of the authorization.

Cal. Civ. Code § 56.11.

17.    Moreover, a health care provider that maintains information for purposes covered by the CMIA is liable for negligent disclosures that arise as the result of an affirmative act—such as implementing a system that records and discloses online patients' personally identifiable

---

[1] Subdivisions (b) and (c) are not relevant to this case but permit the disclosure of medical information in situations where a government investigation or lawsuit is taking place. For example, Scripps could bypass the authorization requirement if patient medical information was requested pursuant to a lawful court order or by a party to a proceeding before a court or administrative agency pursuant to a subpoena. *See* Cal. Civ. Code §§ 56.10(b)(3) and 56.10(b)(6).

---

CLASS ACTION COMPLAINT

information and protected health information.  Cal. Civ. Code § 56.36(c).[2]  Similarly, if a negligent release occurs and medical information concerning a patient is improperly viewed or otherwise accessed, the individual need not suffer actual damages. Cal. Civ. Code § 56.36(b).

18.    "In addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: [¶] (1) ... nominal damages of one thousand dollars ($1,000).  In order to recover under this paragraph, it shall not be necessary that the plaintiff suffered or was threatened with actual damages. [¶] (2) The amount of actual damages, if any, sustained by the patient."  *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1551, 174 Cal. Rptr. 3d 653, 656 (2014) (quoting Cal. Civ. Code § 56.36(b).

### C.    Scripps' Website

19.    Scripps has over 25 primary-care locations across Southern California, more than 2,500 physicians, a total of 1,409 beds between its locations, and served thousands of patients last year.

20.    Scripps offers a full range of medical services, including primary care, cancer care, heart care, orthopedics, walk-in care, and virtual care.

21.    Defendant's website, www.scripps.org, is accessible on mobile devices and desktop computers, and Defendant also offers an app that is available for download on Android and iPhone devices called MyScripps.

### D.    Facebook's Platform and its Business Tools

22.    Facebook describes itself as a "real identity platform,"[3] meaning users are allowed

---

[2] "Every provider of health care ... who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care ... who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36."  Cal. Civ. Code § 56.101, subd. (a).

[3] Sam Schechner and Jeff Horwitz, *How Many Users Does Facebook Have? The Company Struggles to Figure It Out*, WALL. ST. J. (Oct. 21, 2021).

---

CLASS ACTION COMPLAINT

only one account and must share "the name they go by in everyday life."[4]  To that end, when creating an account, users must provide their first and last name, along with their birthday and gender.[5]

23.    In 2021, Facebook generated $117 billion in revenue.[6]  Roughly 97% of that came from selling advertising space.[7]

24.    Facebook sells advertising space by highlighting its ability to target users.[8] Facebook can target users so effectively because it surveils user activity both on and off its site.[9] This allows Facebook to make inferences about users beyond what they explicitly disclose, like their "interests," "behavior," and "connections."[10]  Facebook compiles this information into a generalized dataset called "Core Audiences," which advertisers use to apply highly specific filters and parameters for their targeted advertisements.[11]

25.    Advertisers can also build "Custom Audiences."[12]  Custom Audiences enables advertisers to reach "people who have already shown interest in [their] business, whether they're loyal customers or people who have used [their] app or visited [their] website."[13]  With Custom Audiences, advertisers can target existing customers directly, and they can also build "Lookalike

---

[4] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity.

[5] FACEBOOK, SIGN UP, https://www.facebook.com/

[6] FACEBOOK, META REPORTS FOURTH QUARTER AND FULL YEAR 2021 RESULTS, https://investor.fb.com/investor-news/press-release-details/2022/Meta-Reports-Fourth-Quarter-and-Full-Year-2021-Results/default.aspx

[7] Id.

[8] FACEBOOK, WHY ADVERTISE ON FACEBOOK, https://www.facebook.com/business/help/205029060038706.

[9] FACEBOOK, ABOUT FACEBOOK PIXEL, https://www.facebook.com/business/help/742478679120153?id=1205376682832142.

[10] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting.

[11] FACEBOOK, EASIER, MORE EFFECTIVE WAYS TO REACH THE RIGHT PEOPLE ON FACEBOOK, https://www.facebook.com/business/news/Core-Audiences.

[12] FACEBOOK, ABOUT CUSTOM AUDIENCES, https://www.facebook.com/business/help/744354708981227?id=2469097953376494.

[13] FACEBOOK, AD TARGETING, HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting.

---

CLASS ACTION COMPLAINT

Audiences," which "leverage[] information such as demographics, interests, and behavior from your source audience to find new people who share similar qualities."[14]  Unlike Core Audiences, advertisers can build Custom Audiences and Lookalike Audiences only if they first supply Facebook with the underlying data.  They can do so through two mechanisms: by manually uploading contact information for customers, or by utilizing Facebook's "Business Tools."[15]

26.    As Facebook puts it, the Business Tools "help website owners and publishers, app developers and business partners, including advertisers and others, integrate with Facebook, understand and measure their products and services, and better reach and serve people who might be interested in their products and services."[16]  Put more succinctly, Facebook's Business Tools are bits of code that advertisers can integrate into their websites, mobile applications, and servers, thereby enabling Facebook to intercept and collect user activity on those platforms.

27.    The Business Tools are automatically configured to capture certain data, like when a user visits a webpage, that webpage's Universal Resource Locator ("URL") and metadata, or when a user downloads a mobile application or makes a purchase.[17]  Facebook's Business Tools can also track other events.  Facebook offers a menu of "standard events" from which advertisers can choose, including what content a visitor views or purchases.[18]  Advertisers can even create their

---

[14] FACEBOOK, ABOUT LOOKALIKE AUDIENCES,
https://www.facebook.com/business/help/164749007013531?id=401668390442328.

[15] FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE,
https://www.facebook.com/business/help/170456843145568?id=2469097953376494; Facebook,
Create a Website Custom Audience,
https://www.facebook.com/business/help/1474662202748341?id=2469097953376494.

[16] FACEBOOK, THE FACEBOOK BUSINESS TOOLS,
https://www.facebook.com/help/331509497253087.

[17] *See* FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED,
https://developers.facebook.com/docs/facebook-pixel/advanced/; *see also* FACEBOOK, BEST
PRACTICES FOR FACEBOOK PIXEL SETUP,
https://www.facebook.com/business/help/218844828315224?id=1205376682832142; FACEBOOK,
APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.

[18] FACEBOOK, SPECIFICATIONS FOR FACEBOOK PIXEL STANDARD EVENTS,
https://www.facebook.com/business/help/402791146561655?id=1205376682832142.

---

CLASS ACTION COMPLAINT

8

1    own tracking parameters by building a "custom event."[19]

2        28.    One such Business Tool is the Facebook Tracking Pixel (the "Facebook Pixel").

3    Facebook offers this piece of code to advertisers, like Scripps, to integrate into their website.  As

4    the name implies, the Facebook Pixel "tracks the people and type of actions they take."[20]  When a

5    user accesses a website hosting the Facebook Pixel, Facebook's software script surreptitiously

6    directs the user's browser to contemporaneously send a separate message to Facebook's servers.

7    This second, secret and contemporaneous transmission contains the original GET request sent to

8    the host website, along with additional data that the Facebook Pixel is configured to collect.  This

9    transmission is initiated by Facebook code and concurrent with the communications with the host

10    website.  Two sets of code are thus automatically run as part of the browser's attempt to load and

11    read Defendant's websites—Defendant's own code and Facebook's embedded code.

12        29.    An example illustrates the point.  Take an individual who navigates to Defendant's

13    website and clicks on a tab for allergy information.  When that tab is clicked, the individual's

14    browser sends a GET request to Defendant's server requesting that server to load the particular

15    webpage.  Because Scripps utilizes the Facebook Pixel, Facebook's embedded code, written in

16    JavaScript, sends secret instructions back to the individual's browser, without alerting the

17    individual that this is happening.  Facebook causes the browser to secretly duplicate the

18    communication with Scripps, transmitting it to Facebook's servers, alongside additional

19    information that transcribes the communication's content and the individual's identity.

20        30.    After collecting and intercepting this information, Facebook processes it, analyzes

21    it, and assimilates it into datasets like Core Audiences and Custom Audiences.

22        **E.**    **How Scripps Discloses Class Members' Protected Health**

23               **Information And Assists With Intercepting Communications**

24        31.    Through the Facebook Pixel, Scripps shares its patients' identities and online

25

26    _____

    [19] FACEBOOK, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS,
https://www.facebook.com/business/help/964258670337005?id=1205376682832142; *see also*

27    FACEBOOK, APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.

28        [20] FACEBOOK, RETARGETING, https://www.facebook.com/business/goals/retargeting.

_____

activity, including information and search results related to their private medical treatment.

32.    Scripps allows patients to select options that allow them, *inter alia¸* to find "Doctor & Services" and "Locations," schedule "Virtual Care" appointments, and access the "Billing Office" to pay bills online.



33.    When patients click "Find a doctor," under the "Doctors & Services" tab, they can search by "[s]pecialty or [p]rovider's [n]ame" and "[l]ocation."

---

CLASS ACTION COMPLAINT

**EXHIBIT B
PAGE 22**



34.     When patients find a doctor with whom they wish to have a visit, they may "[v]iew [the] full schedule[s]" of such doctors and "[m]ake an appointment" for both "new patient[s]" and "returning patient[s]" through the Scripps website.



CLASS ACTION COMPLAINT

1



35.    Upon information and belief, whenever patients search their treatment or condition, or whenever patients schedule an appointment, Defendant procures Facebook to intercept

communications that contain protected health information.

36.    Each time Defendant sends this activity data, it also discloses a patient's personally identifiable information, including their Facebook ID ("FID"). An FID is a unique and persistent identifier that Facebook assigns to each user. With it, any ordinary person can look up the user's Facebook profile and name. Notably, while Facebook can easily identify any individual on its Facebook platform with only their unique FID, so too can any ordinary person who comes into possession of an FID. Facebook admits as much on its website. Indeed, ordinary persons who come into possession of the FID can connect to any Facebook profile.

37.    A user who accesses Defendant's website while logged into Facebook will transmit what is known as a "c_user cookie" to Facebook, which contains that user's unencrypted Facebook ID.

38.    When a visitor's browser has recently logged out of an account, Facebook compels the visitor's browser to send a smaller set of cookies.

39.    One such cookie is the "fr cookie'" which contains, at least, an encrypted Facebook ID and browser identifier.[21]   Facebook, at a minimum, uses the fr cookie to identify users.[22]

40.    If a visitor has never created an account, an even smaller set of cookies are transmitted.

41.    At each stage, Defendant also utilizes the "_fbp cookie," which attaches to a browser as a first-party cookie, and which Facebook uses to identify a browser and a user.[23]

42.    The fr cookie expires after 90 days unless the visitor's browser logs back into Facebook.[24] If that happens, the time resets, and another 90 days begins to accrue.[25]

---

[21] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012),  http://www.europe-v-facebook.org/ODPC_Review.pdf.

[22] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[23] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[24] See FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[25] Confirmable through developer tools.

---

CLASS ACTION COMPLAINT

13

43.    The _fbp cookie expires after 90 days unless the visitor's browser accesses the same website.[26]  If that happens, the time resets, and another 90 days begins to accrue.[27]

44.    The Facebook Pixel uses both first-party and third-party cookies.  A first-party cookie is "created by the website the user is visiting"—*i.e.*, www.scripps.org.[28]  A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—*i.e.*, Facebook.[29]  The _fbp cookie is always transmitted as a first-party cookie.  A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook.

45.    Facebook, at a minimum, uses the fr, _fbp, and c_user cookies to link to Facebook IDs and corresponding Facebook profiles.  Defendant sends these identifiers alongside the event data.

46.    Plaintiff never consented, agreed, authorized, or otherwise permitted Scripps to disclose her personally identifiable information and protected health information.  Plaintiff was never provided with any written notice that Defendant discloses its website users' protected health information, nor was she provided any means of opting out of such disclosures.  Defendant nonetheless knowingly disclosed Plaintiff's protected health information to Facebook.

47.    By law, Plaintiff is entitled to privacy in her protected health information and confidential communications.  Defendant deprived Plaintiff of her privacy rights when they: (1) implemented a system that surreptitiously tracked, recorded, and disclosed Plaintiff's and other online patients' confidential communications, personally identifiable information, and protected health information; (2) disclosed patients' protected information to Facebook—an unauthorized third-party eavesdropper; and (3) undertook this pattern of conduct without notifying Plaintiff and

---

[26] *See* FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[27] Also confirmable through developer tools.

[28] PC MAG, FIRST-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/first-party-cookie. This is confirmable by using developer tools to inspect a website's cookies and track network activity.

[29] PC MAG, THIRD-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/third-party-cookie. This is also confirmable by tracking network activity.

---

CLASS ACTION COMPLAINT

without obtaining her express written consent.  Plaintiff did not discover that Defendant disclosed her personally identifiable information and protected health information to Facebook, and assisted Facebook with intercepting her communications, until January 2023.

## CLASS ACTION ALLEGATIONS

48.    Class Definition: Pursuant to Section 382 of the Code of Civil Procedure, Plaintiff brings this action on behalf of himself and other similarly situated individuals (the "Class"), defined as California citizens who, during the class period, had their personally identifiable information or protected health information improperly disclosed to Facebook as a result of using www.scripps.org.

49.    Plaintiff reserves the right to modify the class definition or add sub-classes as necessary prior to filing a motion for class certification.

50.    The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement.

51.    Excluded from the Class is Scripps; any affiliate, parent, or subsidiary of Scripps; any entity in which Scripps has a controlling interest; any officer director, or employee of Scripps; any successor or assign of Scripps; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

52.    Numerosity/Ascertainability.  Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The exact number of Class members is unknown to Plaintiff at this time; however, it is estimated that there are hundreds of thousands of individuals in the Class.  The identity of such membership is readily ascertainable from Scripps' records and non-party Facebook's records.

53.    Typicality.  Plaintiff's claims are typical of the claims of the Class because Plaintiff used www.scripps.org and had her personally identifiable information and protected health information disclosed to Facebook without her express written authorization or knowledge.

Plaintiff's claims are based on the same legal theories as the claims of other Class members.

54. <u>Adequacy.</u>  Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class Members.  Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Class.  Plaintiff is represented by attorneys with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically.  Plaintiff's attorneys are committed to vigorously prosecuting this action on behalf of the members of the Class.

55. <u>Common Questions of Law and Fact Predominate/Well Defined Community of Interest.</u>  Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class.  Such generally applicable conduct is inherent in Defendant's wrongful conduct.  Questions of law and fact common to the Classes include:

(a) Whether Defendant intentionally tapped the lines of internet communication between patients and their medical providers;

(b) Whether Scripps' website surreptitiously records personally identifiable information, protected health information, and related communications and subsequently, or simultaneously, discloses that information to Facebook;

(c) Whether Facebook is a third-party eavesdropper;

(d) Whether Scripps' disclosures of personally identifiable information, protected health information, and related communications constitute an affirmative act of communication;

(e) Whether Scripps' conduct, which allowed Facebook—an unauthorized person—to view Plaintiff's and Class Members' personally identifiable information and protected health information, resulted in a breach of confidentiality;

(f) Whether Scripps violated Plaintiff's and Class Members' privacy rights by using the Facebook Pixel to record and communicate online patients' FIDs alongside their confidential medical communications;

(g)    Whether Plaintiff and Class Members are entitled to damages under CIPA, the CMIA, or any other relevant statute;

(h)    Whether Defendant's actions violate Plaintiff's and Class Members' privacy rights as provided by the California Constitution

56.    <u>Superiority</u>.  Class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action.  Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

<center><b><u>CLAIMS FOR RELIEF</u></b></center>

<center><b><u>COUNT I</u></b></center>
<center><b>Violation Of The California Invasion Of Privacy Act,<br>Cal. Penal Code § 631(a)</b></center>

57.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Class.

58.    The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638.  The Act begins with its statement of purpose.

59.    California penal Code § 631(a) provides, in pertinent part:

60.    A defendant must show it had the consent of <u>all</u> parties to a communication.

61.    At all relevant times, Defendant aided, agreed with, and conspired with Facebook to track and intercept Plaintiff's and Class Members' internet communications while accessing www.scripps.org.  These communications were intercepted without the authorization and consent of Plaintiff and Class Members.

62.    Defendant, when aiding and assisting Facebook's eavesdropping, intended to help

CLASS ACTION COMPLAINT

1    Facebook learn some meaning of the content in the URLs and the content the visitor requested.

2        63.    The following items constitute "machine[s], instrument[s], or contrivance[s]" under

3    the CIPA, and even if they do not, the Facebook Pixel falls under the broad catch-all category of

4    "any other manner":

5        a.    The computer codes and programs Facebook used to track Plaintiff and Class

6            Members' communications while they were navigating www.scripps.org;

7        b.    Plaintiff's and Class Members' browsers;

8        c.    Plaintiff's and Class Members' computing and mobile devices;

9        d.    Facebook's web and ad servers;

10       e.    The web and ad-servers from which Facebook tracked and intercepted Plaintiff's and

11           Class Members' communications while they were using a web browser to access or

12           navigate the www.scripps.org;

13       f.    The computer codes and programs used by Facebook to effectuate its tracking and

14           interception of Plaintiff's and Class Members' communications while they were using

15           a browser to visit Defendant's website; and

16       g.    The plan Facebook carried out to effectuate its tracking and interception of Plaintiff's

17           and Class Members' communications while they were using a web browser or mobile

18           application to visit Defendant's website.

19       64.    Scripps fails to mention that it is using the Facebook Pixel specifically to track and

20   automatically transmit communications to a third party, *i.e.*, Facebook. Moreover, Scripps' Privacy

21   Policy states that sharing information about patients for marketing or sale of health information

22   requires patients' written authorization (as it does for every disclosure of health information not

23   provided for under the Privacy Policy).

24       65.    The patient communication information that Scripps is transmitting using the

25   Facebook Pixel, such as doctor appointment booking information, constitutes protected health

26   information.

27       66.    As demonstrated hereinabove, Scripps violates CIPA by aiding and permitting third

28

---

CLASS ACTION COMPLAINT

parties to receive its patients' online communications through its website without their consent.

67.     By disclosing Plaintiff's and the Class Members' Private Health Information, Defendant violated Plaintiff's and the Class Members' statutorily protected right to privacy.

68.     As a result of the above violations, Defendant is liable to Plaintiff and other Class Members in the amount of $5,000 dollars per violation or three times the amount of actual damages (the greater of these two options).  Additionally, Section 637.2 specifically states that "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

69.     Under the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Defendant in the future.

## COUNT II
### Violation of the California Confidentiality of Medical Information Act
### § 56.10

70.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

71.     Under the California Confidentiality of Medical Information Act § 56.10 ("CMIA"), providers of health care are prohibited from disclosing medical information relating to their patients without a patient's authorization. Medical information refers to "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care... regarding a patient's medical history, mental or physical condition, or treatment. 'Individually Identifiable' means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual...".

72.     Plaintiff and Class Members are patients, and, as a health care provider, Scripps has an ongoing obligation to comply with the CMIA's requirements.

73.     As set forth hereinabove, Facebook ID is an identifier sufficient to allow identification of an individual. Along with patients' Facebook ID, Scripps discloses to Facebook

---

CLASS ACTION COMPLAINT

EXHIBIT B
PAGE 31

several pieces of information regarding its patients' use of their website, which includes, but is not limited to: patient medical conditions, medical concerns, treatment patients are seeking, doctor appointments, medical specialty of the doctor(s) searched for by patients, and patient information regarding COVID-19.

74.     This patient information is derived from a provider of health care regarding patients' medical treatment and physical condition. Accordingly, it constitutes medical information pursuant to the CMIA.

75.     As demonstrated hereinabove, Scripps fails to obtain its patients' authorization for the disclosure of medical information and fails to disclose in its Privacy Policy and Privacy Practices that it shares protected health information for marketing purposes.

76.     Pursuant to CMIA § 56.11, a valid authorization for disclosure of medical information must: (1) be "[c]learly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization"; (2) be signed and dated by the patient or her representative; (3) state the name and function of the third party that receives the information; and (4) state a specific date after which the authorization expires. Accordingly, the information set forth in Scripps' Privacy Policy, Privacy Practices, and Terms and Conditions do not qualify as a valid authorization.

77.     Based on the above, Scripps is violating the CMIA by disclosing its patients' medical information with Facebook along with the patients' Facebook ID.

78.     Under the CMIA, a patient may recover compensatory damages, punitive damages not to exceed $3,000 dollars and attorneys' fees not to exceed $1,000, and the costs of litigation for any violating disclosure of medical information. Alternatively, a patient may recover nominal damages of $1,000 for any negligent release of medical information.

## COUNT III
### Invasion Privacy Under California's Constitution

79.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

---

CLASS ACTION COMPLAINT

80.    Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications and protected health information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

81.    At all relevant times, by using the Facebook Pixel to record and communicate patients' FIDs alongside their confidential medical communications, Scripps intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution.

82.    Plaintiff and Class Members had a reasonable expectation that their communications, identity, health information and other data would remain confidential and that Scripps would not install wiretaps on www.scripps.org.

83.    Plaintiff and Class Members did not authorize Scripps to record and transmit Plaintiff's and Class Members' private medical communications alongside their personally identifiable health information.

84.    This invasion of privacy is serious in nature, scope, and impact because it relates to patients' private medical communications. Moreover, it constitutes an egregious breach of the societal norms underlying the privacy right.

85.    Accordingly, Plaintiff and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

      a.   For a determination that this action is a proper class action;

      b.   For an order certifying the Class, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

      c.   For an order declaring that Defendant's conduct violates the statutes referenced herein;

CLASS ACTION COMPLAINT

d.  For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

e.  For an award of compensatory damages, including statutory damages where available, to Plaintiff and the Class members against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial;

f.  For punitive damages, as warranted, in an amount to be determined at trial;

g.  Ordering Defendant to disgorge revenues and profits wrongfully obtained;

h.  For prejudgment interest on all amounts awarded;

i.  For injunctive relief as pleaded or as the Court may deem proper;

j.  For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

k.  For an order granting Plaintiff and Class members such further relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff on behalf of herself and the proposed Class, demands a trial by jury for all of the claims asserted in this Complaint so triable.

Dated: February 2, 2023                    Respectfully submitted,


**BURSOR & FISHER, P.A.**


By:  _____
           L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Philip L. Fraietta*
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jarisohn@bursor.com
          pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly*
701 Brickell Ave., Suite 1420
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: creilly@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury*
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-Mail: scott@drurylegal.com

*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff*

# EXHIBIT "C"

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
L. Timothy Fisher (SBN 191626) Bursor & Fisher, P.A., 1990 N. California Blvd.
Suite 940, Walnut Creek CA 94596

TELEPHONE NO.: (925) 300-4455    FAX NO. *(Optional):* (925) 407-2700
E-MAIL ADDRESS: ltfisher bursor.com
ATTORNEY FOR *(Name):* Plaintiff Catherine Gorey

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME:

CASE NAME:
Catherine Gorey v. Scripps Health

*FOR COURT USE ONLY*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**02/02/2023** at 06:23:50 PM

Clerk of the Superior Court
By Cheyenne Preston, Deputy Clerk

| **CIVIL CASE COVER SHEET** | | Complex Case Designation | CASE NUMBER: 37-2023-00004850-CU-BT-CTL |
|---|---|---|---|
| [x] Unlimited <br> (Amount demanded exceeds $25,000) | [ ] Limited <br> (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder <br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | JUDGE: Judge Richard S. Whitney <br> DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [x] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [x] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [x] Large number of witnesses
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [x] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* Three
5. This case [x] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: February 2, 2023

(TYPE OR PRINT NAME)          ► *[signature: L. Timothy Fisher]*          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

**EXHIBIT C**
**PAGE 36**

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one box** for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22) Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

**EXHIBIT C**
**PAGE 37**

# EXHIBIT "D"

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | |
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7068 |

| | |
|---|---|
| PLAINTIFF(S) / PETITIONER(S): | Catherine Gorey |
| DEFENDANT(S) / RESPONDENT(S): | Scripps Health |

GOREY VS SCRIPPS HEALTH [IMAGED]

| **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL)** | CASE NUMBER:<br>37-2023-00004850-CU-BT-CTL |
|---|---|

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Richard S. Whitney                                    Department: C-68

## COMPLAINT/PETITION FILED: 02/02/2023

| **TYPE OF HEARING SCHEDULED** | **DATE** | **TIME** | **DEPT** | **JUDGE** |
|---|---|---|---|---|
| Civil Case Management Conference | 07/28/2023 | 09:30 am | C-68 | Richard S. Whitney |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.**  Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC.  (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint.  An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint.  A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed.  If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6).  If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date.  See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged.  The court encourages and expects the parties to consider using ADR options prior to the CMC.  The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

---

**EXHIBIT D**
**PAGE 38**

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.  Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing.  E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.  All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program."  This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain.  The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150.  Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed.  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

**EXHIBIT D**
**PAGE 39**

# EXHIBIT "E"

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| L. TIMOTHY FISHER (SBN 191626)<br>Bursor & Fisher, P.A.<br>1990 N California Blvd Suite 940<br>Walnut Creek, CA 94596<br>Telephone No: 925-300-4455<br><br>Attorney For:   Plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**02/16/2023** at 03:56:00 PM<br>Clerk of the Superior Court<br>By E- Filing,Deputy Clerk |

*Ref. No. or File No.:*
Gorey v. Scripps Health

*Insert name of Court, and Judicial District and Branch Court:*
SUPERIOR COURT FOR THE STATE OF CALIFORNIA COUNTY OF SAN DIEGO

*Plaintiff:* CATHERINE GOREY, individually and on behalf of all other persons
similarly situated
*Defendant:* SCRIPPS HEALTH

| **PROOF OF SERVICE**<br>**SUMMONS** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>37-2023-00004850-CU-BT-CTL |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; CIVIL CASE COVER SHEET; CLASS ACTION COMPLAINT; ADR INFORMATION; NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL); STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)

3. *a.* Party served:    SCRIPPS HEALTH
   *b.* Person served:   Lorenzo Rodriguez, security

4. *Address where the party was served:*   10140 CAMPUS POINT DRIVE CPA 415, SAN DIEGO, CA 92121

5. *I served the party:*
   b. **by substituted service.**   On: Fri, Feb 10 2023 at: 04:58 PM I left the documents listed in item 2 with or in the presence of: Lorenzo Rodriguez, security .

   (1)  [X]  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
   (2)  [  ]  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
   (3)  [  ]  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
   (4)  [X]  **(Declaration of Mailing)** is attached.
   (5)  [  ]  **(Declaration of Diligence)** attached stating actions taken first to attempt personal service.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a.  [  ]  as an individual defendant.
   b.  [  ]  as the person sued under the fictitious name of *(specify)*:
   c.  [  ]  as occupant.
   d.  [X]  On behalf of *(specify)*:   SCRIPPS HEALTH
             under the following Code of Civil Procedure section:

| | | | |
|---|---|---|---|
| [  ] 416.10 (corporation) | | [X] 415.95 (business organization, form unknown) |
| [  ] 416.20 (defunct corporation) | | [  ] 416.60 (minor) |
| [  ] 416.30 (joint stock company/association) | | [  ] 416.70 (ward or conservatee) |
| [  ] 416.40 (association or partnership) | | [  ] 416.90 (authorized person) |
| [  ] 416.50 (public entity) | | [  ] 415.46 (occupant) |
| [  ] other: | | |



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF SERVICE**
**SUMMONS**

*8373375*
*(7964547)*
Page 1 of 2

EXHIBIT E
PAGE 40

| Attorney or Party without Attorney:<br>L. TIMOTHY FISHER (SBN 191626)<br>Bursor & Fisher, P.A.<br>1990 N California Blvd Suite 940<br>Walnut Creek, CA 94596<br>　Telephone No:　925-300-4455<br><br>　Attorney For:　Plaintiff | For Court Use Only |
|---|---|

| | |
|---|---|
| | *Ref. No. or File No.:*<br>Gorey v. Scripps Health |

| Insert name of Court, and Judicial District and Branch Court:<br>SUPERIOR COURT FOR THE STATE OF CALIFORNIA COUNTY OF SAN DIEGO |
|---|

| *Plaintiff:*　CATHERINE GOREY, individually and on behalf of all other persons<br>　　　　　similarly situated<br>*Defendant:*　SCRIPPS HEALTH |
|---|

| **PROOF OF SERVICE**<br>**SUMMONS** | Hearing Date: | Time: | Dept/Div: | Case Number:<br>37-2023-00004850-CU-BT-CTL |
|---|---|---|---|---|

Recoverable cost Per CCP 1033.5(a)(4)(B)

7.　**Person who served papers**
　　a.　Name:　　　　Mark Brown
　　b.　Address:　　　**FIRST LEGAL**
　　　　　　　　　　200 WEBSTER STREET, SUITE 201
　　　　　　　　　　OAKLAND, CA 94607
　　c.　Telephone number:　(415) 626-3111
　　d.　**The fee** for service was:　$262.31
　　e.　I am:
　　　　(1)　☐　not a registered California process server.
　　　　(2)　☐　exempt from registration under Business and Professions Code section 22350(b).
　　　　(3)　☒　a registered California process server:
　　　　　　(i)　☐ owner　☐ employee　☒ independent contractor
　　　　　　(ii)　Registration No:　1865, San Diego County
　　　　　　(iii)　County:　San Diego

8.　*I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

02/10/2023
*(Date)*

Mark Brown


Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF SERVICE**
**SUMMONS**

*8373375*
*(7964547)*
Page 2 of 2

**EXHIBIT E**
**PAGE 41**

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| L. TIMOTHY FISHER (SBN 191626)<br>Bursor & Fisher, P.A.<br>1990 N California Blvd Suite 940<br>Walnut Creek, CA 94596<br>Telephone No: 925-300-4455<br><br>Attorney For: Plaintiff<br><br>*Ref. No. or File No.:*<br>Gorey v. Scripps Health | |

| Insert name of Court, and Judicial District and Branch Court: |
|---|
| SUPERIOR COURT FOR THE STATE OF CALIFORNIA COUNTY OF SAN DIEGO |

| | |
|---|---|
| *Plaintiff:* CATHERINE GOREY, individually and on behalf of all other persons similarly situated | |
| *Defendant:* SCRIPPS HEALTH | |

| PROOF OF SERVICE<br>By Mail | Hearing Date: | Time: | Dept/Div: | Case Number:<br>37-2023-00004850-CU-BT-CTL |
|---|---|---|---|---|

1. *I am over the age of 18 and not a party to this action. I am employed in the county where the mailing occurred.*

2. I served copies of the SUMMONS; CIVIL CASE COVER SHEET; CLASS ACTION COMPLAINT; ADR INFORMATION; NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL); STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)

3. By placing a true copy of each document in the United States mail, in a sealed envelope by **First Class** mail with postage prepaid as follows:
   a. Date of Mailing: Fri, Feb 10, 2023
   b. Place of Mailing: SAN FRANCISCO, CA
   c. Addressed as follows: SCRIPPS HEALTH
             10140 CAMPUS POINT DRIVE, CPA 415 SAN DIEGO, CA 92121

4. *I am readily familiar with the business practice for collection and processing of correspondence as deposited with the U.S. Postal Service on Fri, Feb 10, 2023 in the ordinary course of business.*

                                 Recoverable cost Per CCP 1033.5(a)(4)(B)

5. *Person Serving:*
   a. Juan Cruz
   **b. FIRST LEGAL**
     200 WEBSTER STREET, SUITE 201
     OAKLAND, CA 94607
   c. (415) 626-3111

          **d.** *The Fee for Service was:*
          **e.** I am: Not a Registered California Process Server

6. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

           02/10/2023

            *(Date)*                                      Juan Cruz

Judicial Council Form             **PROOF OF SERVICE**                *8373375*
Rule 2.150.(a)&(b) Rev January 1, 2007     **BY MAIL**                   *(7964547)*

FL
FIRST LEGAL

**EXHIBIT E**
**PAGE 42**

1

## PROOF OF SERVICE

2      I, Nancy L. Brazil, declare:

3      I am employed in Los Angeles County, California.  I am over the age of

4  eighteen years and not a party to the within-entitled action.  My business address is

5  11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA  90025-0509.  On March

6  22, 2023, I served a copy of the within document(s):

7              **DEFENDANT'S NOTICE OF REMOVAL**

8
   ☑        by placing the document(s) listed above in a sealed envelope
            with postage thereon fully prepaid, in the United States mail at
9           Los Angeles, California addressed as set forth below.

10
   ☑        by transmitting via electronic mail the document(s) listed above
            to the e-mail address(es) set forth below on this date before 5:00
11          p.m. and the transmission was reported as complete and without
            error.

12

13  L. Timothy Fisher (SBN 191626)            *Attorneys for Plaintiff*
    **BURSOR & FISHER, P.A.**                 CATHERINE GOREY,
14  1990 North California Blvd., Suite 940     individually and on behalf of all
    Walnut Creek, CA 94596                    other persons similarly situated
15  Telephone:  925.300.4455
    Facsimile:   925.407.2700
16  Emails:     *ltfisher@bursor.com*

17  Joshua D. Arisohn
    Philip L. Fraietta
    **BURSOR & FISHER, P.A.**
18  888 Seventh Avenue
    New York, NY  10019
19  Telephone:  646.837.7150
    Facsimile:   212.989.9163
20  Emails:     *jarisohn@bursor.com*
                *pfraietta@bursor.com*
21
    Christopher R. Reilly
22  **BURSOR & FISHER, P.A.**
    701 Brickell Ave., Suite 1420
23  Miami, FL 33131-2800
    Telephone:  305.330.5512
24  Facsimile:   305.676.9006
    E-Mails:     *creilly@bursor.com*
25
    Scott R. Drury
26  **DRURY LEGAL, LLC**
    6 Carriage Lane
27  Highwood, Illinois 60040
    Telephone:  312.358.8225
28  Emails:     *scott@drurylegal.com*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

43

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on Mach 22, 2023, at Los Angeles, California.



_____
Nancy L. Brazil

Baker & Hostetler LLP
ATTORNEYS AT LAW
LOS ANGELES